UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LACKAWANNA CHIROPRACTIC P.C., a
New York professional corporation,
individually and on behalf of all others            **INTERIM ORDER**
similarly situated,

                              Plaintiff,            18-CV-00649-LJV-JJM

v.

TIVITY HEALTH SUPPORT, LLC, a
Delaware limited liability company,

                              Defendant.
_____

        Familiarity with the relevant procedural history is presumed. Before the court is plaintiff Lackawanna Chiropractic P.C.'s Motion for Preliminary Approval of Modified Class Action Settlement (the "Modified Motion") [54].[1] While the Modified Motion addresses several of the concerns raised in my August 29, 2019 Report and Recommendation [41] (adopted by District Judge Lawrence J. Vilardo on December 26, 2019 [48]), I continue to question whether "the court will likely be able to: (i) approve the proposal under [Fed. R. Civ. P.] Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal" - findings which must be made before preliminary approval can be granted. *See* Rule 23(e)(1)(B). Moreover, in reviewing the Modified Motion, additional issues have occurred to me which I did not previously raise.

        In considering a motion for preliminary approval of a class action settlement, "[t]he court may direct the parties to supply further information about the topics they do address,

---

[1]     Bracketed references are to the CM/ECF docket entries.  Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

or to supply information on topics they do not address". *See* Rule 23 Advisory Committee Notes, 2018 Amendments.

## DISCUSSION

A.    **Is the Proposed Settlement Class Overbroad?**

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* [Rule] 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule - those designed to protect absentees by blocking unwarranted or overbroad class definitions - demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

The requirements for class certification "should not be watered down" merely because the parties seek to settle rather than litigate. Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006). One of those requirements is that "no class may be certified that contains members lacking Article III standing . . . . The class must therefore be defined in such a way that anyone within it would have standing". Id. at 264.

While plaintiff argues that "the presence of a de minimis number of uninjured class members is permissible at class certification" (plaintiff's Memorandum of Law [54-1], p. 4, *quoting* In re Nexium Antitrust Litigation, 777 F.3d 9, 25 (1st Cir. 2015)), that is true only "if those members can be weeded out at a later stage" (id. at 24, n. 20), because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not".

Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1274 (11th Cir. 2019). Therefore, "at some time in the course of the litigation the district court will have to determine whether *each* of the absent class members has standing before they could be granted any relief". Id. (emphasis added).

The Settlement Agreement defines the settlement class as "[a]ll individuals and entities within the United States who were sent a Tivity Fax by or on behalf of Tivity recruiting a provider offering chiropractic services, physical therapy, occupational therapy, speech therapy, acupuncture, massage, and/or complementary and alternative medicine (CAM) services to join a Tivity network." [54-2], §39. However, that definition does not exclude those who may not have been injured by receiving the faxes in question, either because they consented to that receipt, or because they had an established business relationship with Tivity and the fax which they received contained the opt-out notice specified in 47 U.S.C. §227(b)(2)(D), such as the notice contained in the fax sent to plaintiff [15-1].

While the Amended Complaint alleges that neither plaintiff nor any class member consented to receive the faxes in question ([15],¶¶17, 30), Tivity denies those allegations. [29], ¶¶17, 30. Therefore, the court "must probe behind the pleadings before coming to rest on the certification question, satisfying itself that Rule 23 compliance may be demonstrated through evidentiary proof . . . . [T]his inquiry may sometimes overlap with merits issues". Johnson v. Nextel Communications Inc., 780 F.3d 128, 138 (2d Cir. 2015). The requirements for class certification "must be rigorously applied even at this preliminary stage". In re Ephedra Products Liability Litigation, 231 F.R.D. 167, 170 (S.D.N.Y. 2005).

Plaintiff argues that "Tivity asserts two bases for consent . . . . First, that Tivity had consent as to some consumers because they were previously Tivity network providers who provided their fax numbers to Tivity in the context of that relationship; and second, that Tivity

had consent as to other consumers who were not previously Tivity network providers, but with whom Tivity specifically communicated regarding their joining a Tivity network as a provider before sending them Tivity Faxes". Plaintiff's Memorandum of Law [54-1], p. 3.[2] However, absent a description of the content of communications between each of these class members (including plaintiff itself) and Tivity, plaintiff has not ruled out the possibility that one or more of them *did* consent (and therefore were not injured by receipt of the fax) - particularly since consent "need not be in writing and can take any number of forms . . . . *see* 47 U.S.C. §227(a)(5)". Id., p. 5.

The Amended Complaint also alleges that neither plaintiff nor any class member had an existing business relationship with Tivity, ([15],¶¶17, 30), but Tivity denies those allegations. [29], ¶¶17, 30. Therefore, the court must again "probe behind the pleadings" - for if there was such a relationship with one or more class members (including plaintiff itself), and if the faxes sent to those members contained an opt-out notice similar to that contained in the fax sent to plaintiff [15-1], then those members likewise may not have been injured by its receipt.

**B.     Are Class Members Treated "Equitably Relative to Each Other"?**

Rule 23(e)(2)(D) requires the court to consider whether the proposed settlement "treats class members equitably relative to each other". I have a few concerns in this regard. First, the class definition has no time limit, and therefore could conceivably include members whose claims are barred by the TCPA's four-year statute of limitations. *See* Giovanniello v. ALM Media, LLC, 726 F.3d 106, 107 (2d Cir. 2013). However, if plaintiff can confirm that each

---

[2]     Plaintiff bases its characterization of Tivity's consent defense in part on Tivity's interrogatory responses. Id. Those responses should be furnished to the court.

of the faxes at issue was sent within four years of the commencement of this action, that concern will be alleviated.

Secondly, why does the Settlement Agreement allow only one claim per fax number ([54-2], §60), rather than one claim per violation of the TCPA? The Amended Complaint alleges that "Plaintiff and the Class are therefore entitled to a minimum of $500 . . . in damages for each TCPA violation" ([15], ¶33). "Recipients of the unsolicited faxes may recover $500 for each fax that violates the statute." US Fax Law Center, Inc. v. iHire, Inc., 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005); 47 U.S.C. §227(b)(3). Did each fax number receive only one fax which violated the TCPA?

Third, why does the Modified Motion not account for the possibility that one or more class members may have sustained "actual monetary loss" in an amount greater than statutory damages of $500 per violation? Recovery for such loss is specifically provided for by 47 U.S.C. §227(b)(3)(B) and was sought in the Amended Complaint ([15], ¶¶5, 18, 32), yet is not even mentioned in the Modified Motion.

Fourth, what inquiry did class counsel conduct to conclude that no class member would be entitled to treble damages under 47 U.S.C. §227(b)(3)? While plaintiff argues that "no evidence has been obtained that Tivity knew it was violating the TCPA" (plaintiff's Memorandum of Law [54-1], p. 6), the Amended Complaint alleges that "Tivity conceals its unsolicited faxes' marketing intent by misrepresenting in the faxes that recipients are current Tivity providers". [15], ¶11, n. 1. If true, does that suggest that Tivity acted knowingly or willfully?

Finally, since plaintiff has not ruled out the possibility that some class members may have either consented to receive the faxes in question, or that they may have had a business relationship with Tivity and have received faxes containing the opt-out notice like that sent to plaintiff, is it appropriate to grant the same relief to all class members?

**C.     Is the Notice Satisfactory?**

I also have concerns regarding the content of the settlement notice and the method of its distribution. First, the notice will only be mailed to class members. Why is it not also being faxed to the numbers to which the original faxes were sent?

Secondly, the Settlement Agreement states that the initial notice is to be mailed on a postcard ([54-2], §50), with a more detailed "long-form" notice to follow only upon request by a class member. Id., §49. By "postcard", does plaintiff mean the form at [54-2], p. 33 of 180 (CM/ECF pagination)? If so, that form does not state that a long-form notice is available upon request.

Third, neither the postcard nor the long-form notice mention that the TCPA also allows recovery for actual damages, and although both forms describe limits on the amount of attorneys' fees and service award which will be sought, the Settlement Agreement itself provides no such limits.

**CONCLUSION**

Unless otherwise ordered, the parties shall respond in writing to the concerns raised in this Interim Order by May 22, 2020, and oral argument will be held remotely (details to follow) on May 26, 2020 at 2:00 p.m.

-7-

Dated: May 12, 2020

                                                 <u>/s/ Jeremiah J. McCarthy</u>
                                                 JEREMIAH J. MCCARTHY
                                                 United States Magistrate Judge