UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LACKAWANNA CHIROPRACTIC P.C., *a New York professional corporation, individually and on behalf of all others similarly situated*,

        Plaintiff,

v.

TIVITY HEALTH SUPPORT, LLC, *a Delaware limited liability company*,

        Defendant.

18-CV-649-LJV-JJM
DECISION & ORDER

---

On June 7, 2018, the plaintiff, Lackawanna Chiropractic P.C. ("Lackawanna"), commenced this putative class action alleging that Tivity Health Support, LLC ("Tivity"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Docket Item 1. On January 23, 2019, the case was referred to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 25. On March 6, 2020, the plaintiff moved for preliminary approval of a modified class action settlement. Docket Item 54. On July 7, 2020, after supplemental briefing and oral argument on the issue of standing, *see* Docket Items 55-60, Judge McCarthy issued a Report and Recommendation ("R&R") finding that the plaintiff's motion should be denied.[1] Docket Item 61.

---

[1] The Court assumes familiarity with the facts alleged in the amended complaint, Docket Item 15, the supplemental briefing regarding standing, Docket Items 55-60, and Judge McCarthy's analysis in the R&R, Docket Item 61.

Both sides now have objected to the R&R. Docket Item 64. They argue that contrary to the premise underlying the R&R, Lackawanna sufficiently established Article III standing for all members of the proposed settlement class by alleging that all members were actually harmed by Tivity's actions. *Id.*

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objection, and the materials submitted to Judge McCarthy. Based on that *de novo* review, the Court respectfully rejects the R&R's recommendation, finds that the plaintiff has adequately alleged Article III standing, and refers the plaintiff's motion for preliminary approval back to Judge McCarthy for further consideration.

## **DISCUSSION**

Class actions are subject to rules and requirements that do not apply to most federal litigation—for example, court certification of a class and approval of a class action settlement. *See generally* Fed. R. Civ. P. 23. Here, Lackawanna has moved for preliminary approval of a modified class action settlement with a proposed settlement class consisting of:

> [a]ll individuals and entities within the United States who were sent a Tivity Fax[2] by or on behalf of Tivity recruiting a provider offering chiropractic services, physical therapy, occupational therapy, speech therapy,

---

[2] "Tivity Fax" is defined as "the 1,720 faxes that were sent to the fax numbers that appear on the Fax List." Docket Item 54-2 at ¶ 37.

2

>acupuncture, massage, and/or complementary and alternative medicine (CAM) services to join a Tivity network.

Docket Item 54-2 at ¶ 39.[3]  But before this Court can grant that motion, it must determine that it likely will be able to approve the settlement under the requirements of Rule 23(e)(2) and to certify the proposed class under Rule 23.  Fed. R. Civ. P. 23(e)(1)(B).

The R&R recommends denying preliminary approval because the parties have not shown that each member of the settlement class was harmed by Tivity's actions.  *See* Docket Item 61.  The R&R reasons that because there is no mechanism to weed out class members who consented to receive a Tivity Fax, "[a]pproval of the proposed settlement would exceed the court's jurisdiction[] by authorizing payments to those who have not been injured"—*i.e.*, by authorizing payments to those who lack standing.  *Id.* at 5.  Respectfully, this reasoning conflates two overlapping and related—but distinct—issues:  standing and the merits of the case.

Standing is a basic jurisdictional requirement for the exercise of a court's authority.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing [standing]").  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

---

[3] The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  Tivity maintains that at least some of the faxes at issue in this case were not "unsolicited advertisements," that it maintained "an established business relationship" with at least some members of the proposed class, and that at least some members of the proposed class consented to receive the faxes.  *See* Docket Item 64 at 3, 7-8.  The plaintiff disagrees and asserts that every fax violated the TCPA.  *See id.* at 2-3, 7-8.

3

the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560-61).

A statutory violation standing alone, however, does not confer standing. As the Supreme Court recently noted, "under Article III, an injury in law is not an injury in fact." *Id.* at 2205. In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

"For purposes of determining standing, [courts] 'must accept as true all material allegations of the complaint[] and must construe the complaint in favor of the complaining party' (*i.e.,* the class members)." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," as the litigation progresses "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561. But at the class certification stage, passive class members need not "submit evidence of personal standing," *Denney*, 443 F.3d at 263, and viable allegations of standing are enough, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 531 (S.D.N.Y. 2018) ("[W]e consider absent class members' Article III standing solely based on plaintiffs' allegations and the class definition.").

The "threshold question" of whether a plaintiff has Article III standing—that is, whether the plaintiff has adequately "alleged an 'injury-in-fact' that is fairly traceable to

the challenged conduct and redressable by a favorable judicial decision"—must remain "distinct" from "the question of whether [the plaintiff] has a valid claim on the merits." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 143 n.9 (2d Cir. 2000); *cf. SM Kids, LLC v. Google LLC*, 963 F.3d 206, 213 (2d Cir. 2020) ("[F]ederal courts should not treat statutory provisions as jurisdictional thresholds when they do not speak in jurisdictional terms."). In other words, "[t]he standing question is distinct from whether [the plaintiff] has a cause of action." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010); *see also Denney*, 443 F.3d at 265 (finding that class members "suffered injuries-in-fact[] irrespective of whether their injuries [were] sufficient to sustain any cause of action"). Otherwise, the "standing inquiry" would "essentially collapse . . . into the merits." *SM Kids,* 963 F.3d at 212 (quoting *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003)).

The Second Circuit's decision in *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019) is instructive in distinguishing between the standing and merits inquiries here. In *Melito*, the district court conditionally certified a class consisting of individuals who allegedly received spam text messages in violation of the TCPA. *Id.* at 89. On appeal, third-party defendant Experian lobbed a host of purported standing objections, including whether an alleged violation of the TCPA is a sufficiently "concrete injury in fact" to satisfy Article III, regardless of "whether the text messages in question were actually sent by an [automatic telephone dialing system]" under the TCPA and "whether absent class members ineffectively revoked [their] consent." *Id.* at 92-94, 94 n.6 (internal quotation marks omitted). But after concluding that an alleged violation of the TCPA is sufficiently "concrete" for Article III standing, the Second Circuit did not

address Experian's remaining contentions because "though framed as challenges to the district court's subject-matter jurisdiction," those objections "actually attack[ed] the merits of [the p]laintiff's claims." *Id.* at 93-94, 94 n.6; *see also Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021) ("The injuries caused by unwanted fax advertisements . . . occur the moment the unwanted fax is received, regardless of whether the sender can establish a defense to liability under the TCPA.").[4]

Likewise, the question of consent is the very issue at the heart of the *merits—not standing*—in this case. *See Gorss Motels*, 997 F.3d at 476-81 (finding plaintiff had standing under TCPA to challenge receipt of allegedly unwanted faxes before concluding that consent defeated claim on merits). According to Lackawanna's amended complaint, Tivity "sends unsolicited faxes to businesses and other consumers with which it has no relationship to solicit them to be part of Tivity's networks as providers and/or members" and "conceals its . . . marketing intent by misrepresenting in the faxes that recipients are current Tivity providers." Docket Item 15 at ¶ 11 & n.1. If litigation continued, Tivity would counter that it could establish "consent as to some [proposed class members] because they were previously Tivity network providers who provided their fax numbers to Tivity in the context of that relationship"; similarly, Tivity would assert that it could demonstrate "consent as to other consumers who were not previously Tivity network providers, but with whom Tivity specifically communicated

---

[4] To be sure, the *Melito* class definition provided that class members "did not provide [the defendant] with appropriate consent." 923 F.3d at 89. But the class definition did not include any reference to automatic telephone dialing systems, a separate merits-as-standing argument pressed by Experian and rejected by the Second Circuit. *Id.* at 89, 94 n.6. In any event, and as set forth below, the Court concludes that the proposed settlement class here is "defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.

regarding their joining a Tivity network as a provider before sending them Tivity faxes." Docket Item 54-3 at ¶ 8.  In reply, Lackawanna would contend that these are "insufficient bas[e]s for establishing consent"—that is, that Tivity's consent defenses are no defense at all.  *See id.* at ¶¶ 9-10.  Tivity's consent defense thus turns not on whether Lackawanna has adequately alleged class injury, but whether certain class members have a "valid claim on the merits" under the TCPA.  *Lerman*, 232 F.3d at 143 n.9.

But to find that the class has Article III standing in connection with the proposed settlement, the Court need not weigh in on that dispute.  The fact that Tivity might potentially succeed in litigation against some proposed class members—for example, by proving that the faxes did not constitute "unsolicited advertisements" to those class members, by demonstrating an existing business relationship with those class members, or by showing that those class members consented to the faxes—does not mean that those members of the proposed settlement class lack standing.  Indeed, not having to prove or disprove liability—depending on the party's perspective—may be the very reason behind a class action settlement.

In other words, just as the settlement class in *Melito* might include those who consented and "ineffectively revoked [their] consent," 923 F.3d at 94 n.6, the settlement class here might include those who consented or who had a business relationship with Tivity.  And just as the potential inclusion of those class members in *Melito* did not deprive the court of jurisdiction over the proposed settlement class's claims, the same is true here.

7

Other case law also supports the conclusion that a court need not determine that every class member was in fact injured in connection with the claim before approving a class settlement. Consider the example of *In re National Football League Players' Concussion Injury Litigation*, 301 F.R.D. 191 (E.D. Pa. 2014) (the "NFL class action"). In that case, retired football players sued for damages after the defendants allegedly concealed the chronic risks of head injuries and failed to protect players from those risks. *See id.* at 195. The district court granted preliminary approval of a proposed settlement even though the proposal "d[id] not require Settlement Class Members to prove that the Retired NFL Football Player's cognitive injuries were caused by NFL-related concussions or sub-concussive head injuries." *Id.* at 197. Retired players needed to show a qualifying diagnosis to be eligible for settlement funds, but they did not have to prove that their health problems stemmed from their time in the NFL. *Id.* at 196-97. The court in the NFL class action therefore did not, and was not required to, determine whether *all* class members suffered an injury that was in fact tied to the defendants. It was enough that the complaint pleaded that they did.

Here, Lackwanna has submitted evidence that it received a Tivity Fax, and it alleges that Tivity "sen[t] the unsolicited advertisement faxes at issue to [the plaintiff] and members of the [c]lass without their prior express invitation or permission." *See* Docket Item 15 at ¶¶ 10-18, 31; Docket Item 15-1. At this early stage of the litigation, before the completion of discovery and without a pending motion for summary judgment, Lackawanna has sufficiently established that the proposed class has standing. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at

531 (requiring only evidence of named plaintiffs' standing where case has "proceeded beyond the pleading stage[] but ha[s] not yet reached summary judgment").[5]

And the Supreme Court's very recent decision in *TransUnion* does not suggest otherwise. In that case, the proposed class was comprised of all consumers whose credit reports included an error, regardless of whether that error was communicated to third-party businesses and thereby injured the consumers or simply rested in their credit files unknown to the world. 141 S. Ct. at 2200. Under those circumstances, the Supreme Court found that even though the latter class of consumers might have theoretically been injured under the law by TransUnion's inaccurate credit reports, they "did not suffer a concrete harm" and therefore did not have standing. *Id.* at 2209-12.

Here, on the other hand, all class members received a Tivity Fax, and both sides disagree about whether Tivity legally sent that fax to **any** member. In other words, in *TransUnion*, both sides agreed that some members of the class suffered no injury other than a theoretical legal injury from having an error in their credit files; here, the plaintiff has plausibly pleaded, and contends, that all class members were injured in fact by

---

[5] The R&R also rejected the notion that Article III standing for the class can "be based on the pleadings alone." Docket Item 61 at 6 n.6 (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015), for the proposition that standing requires "evidentiary proof" and that the "inquiry may sometimes overlap with merits issues."). But *Johnson* specifically discusses the commonality and predominance requirements of Rule 23, not standing. *See* 780 F.3d at 138. And while the Second Circuit has not resolved whether *named* plaintiffs "generally may rely on allegations in their complaint to establish standing at the class-certification stage," *Melito*, 923 F.3d at 94-95, "absent class members need not 'submit evidence of personal standing,'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 531 (quoting *Denney*, 443 F.3d at 263); *see also* 1 NEWBERG ON CLASS ACTIONS § 2.3 (5th ed.) ("Article III simply requires that the complaint *allege* that absent class members have been injured, not *demonstrate* that they have in fact been injured.") (emphasis in original). As to the named plaintiff here, Lackawanna has submitted evidence that it received a Tivity Fax and thus has standing. *See* Docket Item 15-1.

9

having received a fax that Tivity was not authorized to send to any of them. And that alleged injury is no "bare procedural violation[] divorced from any concrete harm," *id.* at 2213 (quoting *Spokeo*, 136 S. Ct. at 1549); on the contrary, the Second Circuit has already determined that the sort of TCPA violation alleged here suffices to satisfy Article III. *See Gorss Motels*, 997 F.3d at 476; *Melito*, 923 F.3d at 93.

The R&R faulted the settlement class for being defined "without regard to whether the recipient [of a Tivity Fax] consented to receive the fax." Docket Item 61 at 2. But that is not quite accurate. The proposed settlement class does not include anyone who did not receive a fax, *see* Docket Item 54-2 at ¶ 39, and the plaintiff alleges that no class member consented to receive the faxes, s*ee* Docket Item 15 at ¶¶ 4, 11. The proposed class thus does not include anyone who the parties agree consented to receive a fax; indeed, at this stage, there is no such person or entity precisely because it is the issue of consent that is in dispute. The proposed class is thus "defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.

Litigation resolves disputed issues; when a case settles, some issues remain unresolved. That well may be what happens here. *See* Docket Item 64 at 6 (conceding that "at this stage of the litigation, Tivity's consent defenses are in dispute"). The proposed settlement is a compromise between the parties that does not resolve their dispute but instead disposes of it. And the question of whether members of the proposed class have standing does not turn on who is correct about the merits of the case. After all, it is possible for a plaintiff to have standing but eventually lose. To hold otherwise here would place a unique—indeed, perhaps impossible—burden on the plaintiffs in class actions.

Lackawanna has established that all proposed class members received a Tivity Fax and has sufficiently alleged that no class member implicitly or explicitly consented to receive the fax. The Court thus finds that the proposed settlement class has Article III standing. Because Judge McCarthy proceeded no further after concluding that the proposed settlement class lacked standing, the plaintiff's motion is referred back to him for consideration of its remaining arguments.

## **CONCLUSION**

For the reasons stated above, the Court finds that the class has standing. The plaintiff's motion for preliminary approval, Docket Item 54, is referred back to Judge McCarthy for further consideration consistent with this decision and the referral order of January 23, 2019, Docket Item 25.

SO ORDERED.

Dated:   August 27, 2021
         Buffalo, New York

                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE